IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
**Richmond Division**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Criminal No. 3:25-cr-81 |
| | ) | |
| TONY JOHNSON, | ) | |
| | ) | |
| *Defendant*. | ) | |

## SENTENCING POSITION OF THE UNITED STATES

Defendant was part of a conspiracy that agreed to defraud the Virginia Employment Commission (VEC) by fraudulently obtaining COVID-19 unemployment insurance benefits, including under the Federal Pandemic Unemployment Compensation Program and Pandemic Unemployment Assistance, on behalf of Virginia inmates. The conspirators took advantage of a public health crisis to engage in a calculated and deliberate scheme to accrue to themselves scarce public resources.

The United States has reviewed the Presentence Investigation Report (PSR) and does not dispute any of the facts or factors set out therein, though the government joins the defense in requesting a variance to adjust for an unanticipated enhancement.

Defendant's applicable Sentencing Guideline range, based on his Total Offense Level of 16 and his Criminal History Category of V, is 41 to 51 months of imprisonment. PSR ¶¶ 109-10. After the joint request for a variance that would bring the Total Offense Level to 14, the Guideline range would be 33-41 months. After careful consideration of each of the statutory factors enumerated in 18 U.S.C. § 3553(a), the United States recommends that the Court sentence defendant to a term of imprisonment of 37 months. Such a sentence would be sufficient, but not greater than necessary, to accomplish the sentencing objectives set forth in 18 U.S.C. § 3553(a).

## BACKGROUND

For many Americans, the COVID-19 pandemic resulted in an unprecedented time of financial hardship, turmoil, and suffering, but for defendant, it constituted a lucrative opportunity to line his pockets with funds intended for others. As the pandemic ravaged the country, Congress appropriated billions of dollars to create or supplement government relief programs, including for unemployed workers devasted by the loss of employment opportunities due to COVID-19.

Exploiting vulnerabilities in the execution of this massive relief effort, defendant and his co-conspirator executed an extensive fraud scheme targeting a main COVID-19 relief program. Specifically, defendant, with the assistance of his co-conspirator, repeatedly submitted false and misleading unemployment applications to the VEC using the personal identifying information of inmates. Defendant played a central role in the scheme, gathering and passing the personal identifying information (PII) of other inmates to his co-conspirator so she could file fraudulent unemployment applications. The intended fraud loss associated with the conspiracy was $136,556. PSR ¶ 9.34.

On May 27, 2025, the United States filed a one-count Criminal Information detailing the criminal conduct described above. PSR ¶ 1. The Information charged defendant with one count of Conspiracy to Commit Mail Fraud, in violation of 18 U.S.C. § 1349. PSR ¶ 1. On June 12, 2025, defendant pled guilty to the Information pursuant to a written plea agreement with the United States. *Id.* ¶ 2.

Sentencing is set for October 29, 2025.

## Acceptance of Responsibility

The United States moves to permit defendant to receive a third point for acceptance

of responsibility, pursuant to U.S.S.G. § 3E1.1(b), as defendant has "assisted authorities in the investigation or prosecution of his own misconduct by timely notifying authorities of his intention to enter a plea of guilty, thereby permitting the [United States] to avoid preparing for trial and permitting the [United States] and the court to allocate their resources efficiently."

## POSITION ON SENTENCING

Following the Supreme Court's decision in *United States v. Booker*, 543 U.S. 220 (2005), the Sentencing Guidelines are "effectively advisory." *Id.* at 245. Nonetheless, the advisory nature of the Guidelines "does not mean that they are irrelevant to the imposition of a sentence." *United States v. Moreland*, 437 F.3d 424, 432 (4th Cir. 2006); *see also United States v. Green*, 436 F.3d 449, 455 (4th Cir. 2006). Indeed, the Guidelines "seek to embody the Section 3553(a) considerations, both in principle and in practice." *Rita v. United States*, 551 U.S. 338, 350 (2007). Thus, a sentencing court "must consult [the] Guidelines and take them into account when sentencing" to "provide certainty and fairness in meeting the purposes of sentencing, [while] avoiding unwarranted sentencing disparities." *Booker*, 543 U.S. at 264 (internal quotation omitted); *United States v. Biheiri*, 356 F. Supp. 2d 589, 593 (E.D. Va. 2005).

A sentencing court should first calculate the range prescribed by the Sentencing Guidelines after making the appropriate findings of fact. *United States v. Hughes*, 401 F.3d 540, 546 (4th Cir. 2005). Following that calculation, a sentencing court must then "consider that range as well as other relevant factors set forth in the guidelines and those factors set forth in [18 U.S.C.] § 3553(a) before imposing the sentence." *Id.*

### A. The Advisory Guidelines Range

As noted above, the United States has no objection or corrections to the PSR, though the government joins the defense in requesting a variance to account for an unanticipated

enhancement. Defendant's Total Offense Level is 16 and his Criminal History Category of I, resulting in a Guidelines range of 41 to 51 months of imprisonment. PSR ¶¶ 109-10. After the joint request for a variance that would bring the Total Offense Level to 14, the Guideline range would be 33-41 months.

The parties jointly propose that the Court grant a downward variance to back out the enhancement under USSG § 2B1.1(b)(12), relating to whether the fraud occurred during a presidentially declared emergency. The basis for the joint request for a variance is that the government did not appreciate in May and June 2025 when the pleas were negotiated that the enhancement was likely to apply. In the context of these prisoner unemployment schemes, the question of whether the fraud occurred during a declared disaster turns on the presence of Lost Wage Assistance (LWA) funds because those were the only funds issued due to the presidentially declared disaster and not by congressional action. During the above time periods in May and June 2025, the government was not aware that LWA funds were an issue in this case, and so did not discuss with defense counsel the applicability of the enhancement or the resulting enhanced statutory penalties.[1] After the plea hearings in this and the companion case, the government determined that LWA funds *were* at issue because the conspiracy involved $7200 in LWA funds, and thus the enhancement applies per its terms.

But this raised another issue: *Apprendi*. Per *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000), any attempt to increase the statutory maximums outside of the charging instrument is ineffective. Here, the plea agreement explicitly includes the non-enhanced penalties, offering

---

[1] *See* 18 U.S.C. § 1343 (raising the statutory maximum from 20 years of imprisonment to 30 years "[i]f the violation occurs in relation to, or involving any benefit authorized, transported, transmitted, transferred, disbursed, or paid in connection with, a presidentially declared major disaster or emergency).

no hint to defendant that the enhanced penalties were a possibility. So while it is true that Guideline estimates are just that, and variances are not normally jointly sought just because the estimate in the PSR is higher than counsels' estimate, here those estimates have greater reliance interests because of the *Apprendi* issue. Thus, the government joins defendant in a downward variance that would put defendant in the same position as if the § 2B1.1(b)(12) enhancement did not apply. Thus, if the Court agrees, the working Guideline range would reflect a Total Offense of 14 instead of 16, and the resulting range would be 33-41 months.

### B. 18 U.S.C. § 3553(a) Factors

After the Court has properly calculated the Guidelines range and ruled upon all departure motions, the Court must then consider the factors identified in 18 U.S.C. § 3553(a) to fashion a reasonable sentence. *Gall v. United States*, 552 U.S. 38 (2007). Here, the § 3553(a) factors discussed below support a sentence of 37 months' imprisonment.

#### 1. Nature and Circumstances of the Offense

The nature and circumstances of defendant's offenses support a sentence at or near the midpoint of the Guidelines' range. Defendant and his co-conspirator exploited the COVID-19 pandemic to enrich himself at the expense of unemployed workers.

First, defendant and his co-conspirator identified and seized an opportunity to defraud the VEC, exploiting the pandemic to their advantage. At the time, the federal government had taken several steps to mitigate the effects of the pandemic on businesses and workers. One of those initiatives was legislation passed by Congress increasing the funds available for states to pay unemployment insurance benefits to recipients and providing pandemic unemployment assistance for unemployed workers who normally would not qualify for traditional unemployment insurance benefits. This legislation resulted in (1) greater eligibility

for unemployed workers to qualify and receive unemployment insurance benefits, and (2) the weekly benefit payment for unemployment insurance in Virginia was temporarily increased to a minimum of $758 per week. This legislation was much needed, as millions of unemployed workers across the United States turned to the unemployment insurance program as their jobs were imperiled by the effects of the pandemic.

The scheme was as simple as it was effective. Defendant, who was incarcerated, offered his own PII and recruited other prisoners to do the same. He passed the PII to his co-conspirator in recorded jail calls, and she in turn filed fraudulent unemployment applications on behalf of the inmates. Defendant held an important role because the scheme depended on the flow of PII to fuel the fraudulent unemployment applications. The scheme caused $136,556 in intended loss to VEC and $134,780.38 in actual loss, even if these two conspirators did not receive all of this money. PSR ¶¶ 8.34, 9-10.

The seriousness of defendant's crimes is the primary reason for a Guideline sentence, and the extended time it took to investigate defendant's case and negotiate a plea deal, and the already existing concessions, do not favor a lower sentence. It is important to remember the precarious state of the nation in the months and years following defendant's commission of his crimes; indeed, exploiting that precariousness was part of the conspiracy. When the conspiracy began in June 2020, the nation was almost in stasis. Even when life began, slowly, to return to normal, the unprecedented scope of the pandemic fraud schemes quickly overwhelmed law enforcement. Navigating the numerous complexities of these investigations and the multitude of subjects was an immense exercise. All these factors were present here.

The nature and circumstances of the offense argue in favor of a Guideline sentence.

### 2. History and Characteristics of the Defendant

Defendant's history and characteristics demonstrate serious concerns. While his recent good behavior and consistent work history is a clear positive, he has spent a large amount of his adult life either incarcerated or committing crimes. PSR ¶¶ 37-65. His 2009 armed robbery conviction, which landed him in prison for about 11 years, involved a home invasion at 3 am and holding a victim at gunpoint for eight hours. PSR ¶¶ 45-46. He and his now-wife also committed at least two classes of crimes while he was incarcerated for the armed robbery: a set of 2018 convictions for attempting to bribe a prison guard to smuggle contraband into the prison, PSR ¶ 47, and the current offense where they worked together to file more than $130,000 in fraudulent unemployment applications. The fact that his most recent criminal history is committing crimes with his now-wife is not a good sign for his future recidivism.

The United States submits that these factors commend a Guideline sentence.

### 3. Need to Afford Adequate Deterrence, Reflect the Seriousness of the Offense, and Provide Just Punishment

The Court must also weigh the need for the sentence imposed to afford adequate specific and general deterrence. 18 U.S.C. § 3553(a)(2). In this respect, the Government submits that a sentence of 37 months is justified.

The conspiracy occurred during a very sensitive period for this country, and the conspirators exploited this uncertainty and the generosity of a nation for their own purposes. This serious conduct must be adequately addressed.

A sentence within the advisory Guidelines range is likewise appropriate to establish the goal of general deterrence. General deterrence is perhaps even more important in financial fraud cases such as this one, which are often difficult to detect, investigate, and prosecute. *See, e.g.*, *United States v. Martin*, 455 F.3d 1227, 1240 (11th Cir. 2006) ("Because economic and

fraud-based crime are 'more rational, cool, and calculated than sudden crimes of passion or opportunity' these crimes are 'prime candidates for general deterrence.'"). A Guideline sentence in this case will provide the appropriate disincentives to those contemplating similar criminal conduct. *See e.g., United States v. Morgan*, 635 F. App'x 423, 450 (10th Cir. 2015) ("General deterrence comes from a probability of conviction and significant consequences. If either is eliminated or minimized, the deterrent effect is proportionately minimized."); *United States v. Bergman*, 416 F. Supp. 496, 499 (S.D.N.Y. 1976) (stating that absent a meaningful term of imprisonment, general deterrence—"the effort to discourage similar wrongdoing by others through a reminder that the law's warnings are real and that the grim consequence of imprisonment is likely to follow"—will not be achieved.).

A Guidelines sentence will send a necessary message to those individuals who may be inclined, as was defendant, to view emergency programs as simply lucrative criminal opportunities for fraudulent enrichment. Such a sentence reflects the seriousness of defendant's offenses, and will appropriately punish defendant.

## CONCLUSION

For the reasons discussed above, the United States respectfully requests that the Court sentence defendant to a term of imprisonment of 37 months.

Respectfully submitted,

Lindsey Halligan
United States Attorney

By:    _____/s/_____
Shea Matthew Gibbons
Assistant United States Attorney
Virginia Bar No. 83916
United States Attorney's Office
919 E. Main Street, Suite 1900

8

Richmond, Virginia 23219
Phone: (804) 819-5400
Fax: (804) 819-7417